Christian E. Mammen (State Bar No. 188454)
Chris.Mammen@wbd-us.com
Carrie Richey (State Bar No. 270825)
Carrie.Richey@wbd-us.com
**WOMBLE BOND DICKINSON (US) LLP**
1841 Page Mill Road, Suite 200
Palo Alto, CA 94304
Tel.: 408-341-3067
Fax: 408-341-3098

Peter Bromaghim (State Bar No. 240821)
Peter.Bromaghim@wbd-us.com
**WOMBLE BOND DICKINSON (US) LLP**
12400 Wilshire Blvd., Ste. 600
Los Angeles, CA 90025
Tel.: 424-369-2056

*Attorneys for Plaintiffs* DIPTYQUE SAS and
DIPTYQUE DISTRIBUTION LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## (WESTERN DIVISION)

| | |
|---|---|
| DIPTYQUE SAS, a French Company, and DIPTYQUE DISTRIBUTION LLC, a New York limited liability company,<br><br>                    Plaintiffs,<br><br>  v.<br><br>ITALIC, INC.,<br><br>                   Defendant. | Case No.: 2:21-cv-8227<br><br>**COMPLAINT FOR**<br><br>1. **FALSE ADVERTISING**<br>2. **UNFAIR COMPETITION**<br>3. **TRADEMARK INFRINGEMENT**<br>4. **COPYRIGHT INFRINGEMENT** |

Plaintiffs Diptyque SAS ("Diptyque") and Diptyque Distribution LLC ("Diptyque Distribution") (collectively "Plaintiffs"), for their complaint against Defendant Italic Inc. ("Italic" or "Defendant") state and allege the following:

**NATURE OF THE ACTION**

1.     This is an action for false advertising, unfair competition, trademark infringement, and copyright infringement.

2.     Diptyque is an iconic Parisian fragrance company and internationally-recognized luxury brand. Diptyque began as a fragrance house in Paris in 1961, and that expertise carries through to one of its most well-known products – a line of perfumed candles featuring luxurious, highly concentrated fragrances.  Many of Diptyque's candle products bear a prominent and unique oval design label, which was created by one of its co-founders, Desmond Knox-Leet, in 1961. Through the oval design's consistent use for 60 years, it has become exclusively associated with Diptyque, and is instantly recognizable to consumers. Diptyque's retail presence has grown over the years to encompass 88 boutiques in fifty countries, and it also is sold in many major luxury department stores throughout the world. Diptyque Distribution has the exclusive right to distribute Diptyque products in North America.

3.     Italic is an online retailer, founded in 2018, that sells various home and personal goods and accessories, including scented candles, which it claims to have designed and developed. *See* https://italic.com/. Italic claims to have "eliminated traditional brand and retail markups" which allows its customers to "pay 50-80% less for the exact same quality." *See* https://italic.com/about-us. Italic claims that the same "network of independent manufacturers" that are "behind your favorite brands" supply its products. *See* https://italic.com/about-us. Italic's business model and marketing is aimed at convincing consumers that the cheaper, unbranded products available on its website offer the same quality as top name brand products in all respects.

1

4.    In furtherance of this marketing strategy, Italic recently released a "compare to Diptyque" advertising campaign to falsely imply parity between Diptyque's scented candles and Italic's scented candles.  Italic launched ads on billboards in Los Angeles and New York City (of which Diptyque is aware) and on Italic's website, which falsely indicate parity, when in fact the two candles being compared are not commensurate in size, burn rate, content, fragrance concentration, potency, and other variables that make Diptyque candles superior and more desirable.

5.    Italic's advertisements in fact comprise a series of false statements and depictions.  The Diptyque candle portrayed in the advertisement is not accurate, with regard to its size, burn rate, or its price, and the candle image has been altered in at least size and color.  The price of the comparative Italic candle is not accurate either, in that it represents Italic "member pricing" which includes a $60 annual fee.  Italic attempts to reconcile some of these issues in mouse-print disclaimers – which would not be legible to consumers on any billboard – but those disclaimers are also inaccurate as to the burn rate and size of the Diptyque candle portrayed in the advertisement.  *See* **Exhibit A** (billboards, advertisements at issue).  Even if Italic had accurately depicted the candles in appearance and stated their material differences in its advertisement, there would have been no legitimate comparison.

6.    Setting aside the marked differences in quality, fragrance concentration, and burn time, it was unnecessary for Italic to use Diptyque's instantly recognizable oval design logo, and to manipulate the appearance of Diptyque's candle and otherwise disparage the Diptyque brand.  Italic chose to use Diptyque's logo trademarks and copyrights as a means to trade on Diptyque's substantial goodwill, and use the well-known marks and copyright of a market leader to capture consumers' attention for its own product - and in large-scale billboard form.

2

7.     Therefore, Plaintiffs bring this action for unfair competition and false advertising under Section 43(a) of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1125(a); trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); Copyright Infringement Under 17 U.S.C. § 501, false advertising under California's False Advertising Law, California Business & Professions Code § 17500, *et seq.*; unfair competition under California's Unfair Competition Law, California Business and Professions Code § 17200, *et seq.*; and unfair competition under California common law.

## THE PARTIES

8.     Diptyque is a French Limited Liability Company with a principal place of business at 5 Avenue de l'Opera 75001 Paris, France.

9.     Diptyque Distribution is an affiliate of Diptyque with the exclusive distribution rights for Diptyque products in North America. Diptyque Distribution is a Delaware limited liability company with its North American Headquarters located at 240 W 35th St 14th floor, New York, New York 10001.

10.     Upon information and belief, Defendant Italic Inc. is a Delaware corporation with a principal place of business at 340 S Lemon Ave #7499, Walnut, California 91789.

## JURISDICTION AND VENUE

11.     This Court has subject-matter jurisdiction under Section 39 of the Lanham Act, 15 U.S.C. § 1121, under 28 U.S.C. §§ 1331, 1338(a), 1338(b), and 1367, and under principles of supplemental jurisdiction.

12.     This Court has personal jurisdiction over Italic because, upon information and belief, Italic's headquarters are located in Los Angeles, and it has employees located in this State.

13.     This Court also has personal jurisdiction over Italic because the offending advertisements have appeared on billboards in this district; Italic has purposefully directed its activities at residents of Los Angeles, through a billboard

or billboards and its interactive website directed at residents of this district; Plaintiffs' claims arise out of or relate to those false and misleading advertisements; and assertion of personal jurisdiction over Italic is reasonable and fair at least because of its business activities in this state.

14. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1), and (b)(2). Italic resides in this District for the purposes of venue. Further, because a substantial part of the events giving rise to the claims occurred in this district, Italic's conduct affects commerce in this District and has caused harm to Diptyque in this District, and Italic may be found in this district within the meaning of 28 U.S.C. § 1391(b)(2).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

15. Diptyque is a legendary French perfumer and maker of luxury scented candles, home fragrances and body care collections. Diptyque has been producing the finest quality personal and home fragrances for 60 years. The Diptyque story began in 1961 in Paris at 34 boulevard Saint-Germain as a stylish bazaar curated, during their travels, by the three founders. Diptyque's first three candles were released in 1963 and its first fragrance in 1968. Gradually transforming into a world of its own, the store soon boasted a dazzling repertoire of fragrances and candles, and the brand's signature black lettering on the renowned oval label quickly became, and remains to this day, iconic. Diptyque is now regarded as one of the world's leading luxury houses of fine fragrance products. Diptyque operates 88 boutiques worldwide and 23 in the U.S., including NYC, Brooklyn, San Francisco, Marin, Los Angeles, Beverly Hills, Pacific Palisades, Palo Alto, Santa Clara, Costa Mesa, Chicago, Atlanta, Houston, Dallas, Bal Harbour, Austin, Miami and Las Vegas, that deliver a modern take on the 34 boulevard Saint-Germain store, paying homage to the brand's rich heritage and iconic collections. Diptyque has a presence in many major luxury department stores including Harrods, Selfridges, Le Bon Marche, Neiman Marcus, Nordstrom, Saks, Bergdorf Goodman and similar stores throughout

4

the world.  Diptyque has grown into an international perfume and candle business – it is perhaps best known for its extensive line of perfumed candles.

16.    Diptyque is the owner of distinctive and highly valuable intellectual property in many countries, including the U.S.  Diptyque is the exclusive owner of all right, title, and interest in and to a global portfolio of trademark registrations. These include incontestable federal registrations in the DIPTYQUE word mark (U.S. Reg. Nos. 3,072,944 and 3,095,918), and a word and design mark of 34 BOULEVARD SAINT GERMAIN DIPTYQUE PARIS5E depicting the words inside an oval shape (U.S. Reg. No. 2,588,179) (the "Oval Mark") (registrations attached as **Exhibit B**).  These marks are referred to collectively herein as the "Diptyque Marks."

17.    Diptyque uses the Diptyque Marks, and many variations of the same, on its sought-after fragrance products and scented candles.  In addition, Diptyque often uses jumbled and stacked letters that appear inside its Oval Mark.  This is striking and very much associated with Diptyque.  For example, one of Diptyque's best-selling candles is its BAIES ("berries" in French) candle, the candle depicted in Italic's false advertisements, which follows this same style where BAIES appears in jumbled and stacked letters inside of the Oval Mark (the "BAIES Logo").

18.    Diptyque also claims copyright protection in the BAIES Logo (see **Exhibit C**, referred to herein as the "Diptyque Copyright")[1], as well as common law trademark rights in the BAIES Logo overall.

---

[1] Diptyque recently filed for U.S. copyright protection of its BAIES Logo on an expedited basis.  Because the BAIES Logo was first published in France, under the Berne Convention for the Protection of Literary and Artistic Works, Diptyque may file suit prior to registering the work at the U.S. Copyright Office.

COMPLAINT                                    CASE NO.:

*Italic's Advertisements and Website Use*

19.     As indicated above, Italic's business model is based on its claim that "Italic makes unbranded luxury goods using the same factories as brands like Hermés," as indicated on its own website and third-party websites.   *See, e.g.,* https://www.businessinsider.com/italic-scented-candles-review.

20.     On its website, Italic sells a scented candle named "The Original Soy Candle" in four scents. *See* https://italic.com/products/the-original-soy-candle. Italic's advertisements at issue in this matter attempt to directly compare this candle to Diptyque's BAIES candle.

21.     Italic has launched a number of billboard advertisements, including at least one in Los Angeles (at Glendale Blvd. and Montana Street), and at least two in New York City[2], drawing a direct and false comparison between the two candles. These feature the tagline "A candle that doesn't smell like burning money", with a Diptyque BAIES candle (displaying the BAIES Logo with the DIPTYQUE word mark below), next to the Italic "The Original Soy Candle."  Photos of the Los Angeles and New York billboards are below, along with a higher definition rendering of the billboards for clarity.



---

[2] Italic's counsel has represented to Plaintiffs' counsel that the two known New York City billboard advertisements have very recently been removed - as a result of their predetermined advertising term expiring, not as a result of Diptyque's false advertising and infringement claims.

COMPLAINT                                      CASE NO.:



22.     At the same time, on Italic's website (depicted below), Italic has compared its candles to unspecified Diptyque candles solely on price, despite the fact that not all Diptyque candles are the same size, burn time or price point.  On the product page for Italic's The Original Soy Candle, Italic listed comparative pricing of its candle, an unspecified Diptyque candle, and an unspecified Otherland (another candle-maker) candle. The webpage contained no disclosure at all as to the many material differences between the products, or even which specific candle products were being compared.[3]

---

[3] Italic appears to have recently amended its website to remove reference to "comparative" candles on The Original Soy Candle product page.  This coincided with Diptyque's letter to Italic regarding its false advertising and infringement claims.

COMPLAINT                                    CASE NO.:



***Comparative Advertising Background***

23.    In general terms, comparative advertising is permitted under federal and state laws when the advertisement is truthful and honest regarding the products compared and their respective benefits.  For the reasons detailed herein, the Italic billboard advertisements and website product pages create a patently false comparison and are inaccurate in numerous ways.

24.    Comparative advertising also requires that the advertiser not disparage or tarnish the allegedly competing product.  Italic's billboard tagline "A candle that doesn't smell like burning money" jabs at the primary feature of Diptyque's candles – their fragrance – to baselessly convey to consumers that Diptyque's high-end candles are, at best, a rip-off, and at worst, a fraud.

25.    In the context of trademark and other intellectual property rights, comparative advertising also requires, among other elements, that the advertiser use only so much of the mark or marks as is reasonably necessary to identify the product or service.  *See New Kids on the Block v. News America Publishing, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992).  For this reason, use of third-party word marks is tolerated under the law in certain contexts (*e.g.*, "compared to the Apple® iPod®"), whereas

8

using third-party logos and other indicia of the competing product is rarely if ever *necessary* to the comparison, and serves only to trade on the goodwill of the leading brand.  If it were lawful for "competitors" to take luxury-brand logos, without authorization or license, for the purposes of product "comparisons," competitors would do this with abandon, while brands could not reasonably control their intellectual property.  In the present case, the trading on Diptyque's goodwill is clear, as is the resulting damage to Diptyque's intellectual property rights.

### *Italic's Misrepresentations*

26.   Italic's advertisements at issue are not truthful or honest, and falsely convey the overall impression that consumers can get the same ambiance, performance and benefits with Italic candles as with Diptyque candles, for a fraction of the cost.

27.   Upon information and belief, and based on Diptyque's deep knowledge of its products and manufacturers, there is no basis for the claim or the implication that Italic's "The Original Soy Candle" is comparable in quality or fragrance concentration to the Diptyque BAIES candle (or any of Diptyque's candles), or that Italic is "using the same factories" as Diptyque products, as Italic is indicating in relation to other luxury brands.

28.   Unlike certain utilitarian goods or services, for which cost and performance may be easily measurable, there can be no fair and objective comparison involving a luxury candle, embodying 60 years of fragrance development and expertise, and a "competing" non-luxury scented candle.  The overall context of the ad, including Italic's tagline "A candle that doesn't smell like burning money," reinforces that the products are "equal" but for the price difference, which is false.

29.   In addition to the overall misplaced comparison, each Italic billboard advertisement contains demonstrably false information and misrepresentations.  The Diptyque candle pictured (based on the BAIES Logo shown) is not the candle Italic

9

1    represents it to be by the price displayed or the features set forth in Italic's

2    disclaimer.  The Diptyque candle pictured is actually Diptyque's 300g BAIES candle

3    which has a burn time of up to 75 hours, not 60 hours, and is a 300g rather than 190g

4    candle.  Diptyque's 300g BAIES candle is sold in black wax with black glass.

5    Diptyque's 190g BAIES candle is in fact sold only in white wax with clear glass,

6    with the BAIES Logo in black, (see below) but that candle is not pictured.



190g BAIES Candle

14       30.    Italic's minute disclaimer on the billboard advertisement refers to

15   Diptyque's 190g candle, stating that the "Italic candle is a 240g soy scented candle

16   with up to 40 hours burn time, and the Diptyque candle is a 190g paraffin scented

17   candle with up to 60 hours burn time."  In other words, Italic's disclaimer does not

18   reference the candle actually displayed, and which has a burn time of up to 75 hours,

19   not 60 hours, nearly double that of the Italic candle shown.

20       31.    Even if Italic had shown the Diptyque 190g candle (which is white), the

21   disclaimer is an admission that, even setting aside other material characteristics

22   noted above, the two candles are not comparable in size or burn time.

23       32.    Each of the claims in Italic's advertisements is false by necessary

24   implication.  Considering the advertisements in their full context, each advertisement

25   necessarily implies that Italic's candles and Diptyque's candles are the same in all

26   material and relevant respects other than price.   This is demonstrably false.

27   Diptyque's candles have superior fragrance quality, potency, and burn time.  Italic

28   offers no support for its implied parity message.  Nor does Italic advertising account

10

for the fact that Diptyque uses highly concentrated fragrances developed with decades of expertise in its candles that are not easily replicated and are factored into Diptyque's pricing.

33.    Italic's advertisements also misrepresent that the candles are similar in size and color when they are not. The actual 300g Diptyque candle depicted in the advertisement is both taller and wider than Italic's candle.  The Diptyque candle is 3.5 inches in diameter and 3.9 inches in height.  The Italic candle is smaller, 3.34 inches in diameter and 3.74 inches in height.  These differences in size, in the real world, would be noticeable and apparent to any consumer, but, based on the manipulated images on Italic's billboard advertisement, the differences in size are not noticeable or apparent[4].

34.    Italic's advertisements also appear to alter or misrepresent Diptyque's BAIES Logo.  On its 300g black wax candles in black glass, Diptyque uses the BAIES Logo in a subtle gray color, not the white shown on the billboard, as below:



300g BAIES Candle

Upon information and belief, Italic altered the color of the BAIES Logo to make it further stand out to consumers, and draw consumer eyes to the billboards, by using

---

[4] Plaintiffs have attempted to take an accurate side-by-side photograph of the two products to further illustrate these distinctions, but, despite ordering Italic's candles with expedited (two-day delivery) handling seven days before the filing of this Complaint, shipping of Italic's candles has been inexplicably delayed and they still have not been received as of the filing of this Complaint.

COMPLAINT                                          CASE NO.:

Diptyque's trademark.  Further, upon information and belief, and based on a review of the billboard image and the actual product image, Italic has (a) altered the BAIES Logo on the billboard images to make it appear askew, and thus suggest the Diptyque products are in fact not high quality or that the difference in price is otherwise not justified on that basis, and/or (b) altered the color of the Diptyque candle overall to have it appear as a dark brown, and not the sharp black as it actually appears.

35.   Italic has also misrepresented the price of its own candle shown on the billboards.  The $16 price shown is in fact a "member price" available only to Italic members, who pay a $60 annual fee to obtain such preferred pricing.[5]  This member pricing is reflected on Italic's website (see above), but not addressed in any way on the billboard or its disclaimer.

36.   In sum, Italic's billboard advertisements constitute a host of misrepresentations, which cannot be remedied by a mouse-print disclaimer that is itself inaccurate.

37.   In any case, there can be no doubt that the disclaimer would not be viewable to the vast majority of consumers who would encounter the billboard driving by in a vehicle or walking by on foot.  The size is so small as to render it useless.  Again, if the disclaimer *were* viewable, it would only serve to confuse and exacerbate the deception, and otherwise illustrate that the two products are not comparable in any meaningful way

38.   No small-print disclaimer can reasonably transform an advertisement that is neither fair nor objective on its face into a "fair" one.  Nor could a disclaimer otherwise address the disparaging connotation of these advertisements generally, and the unnecessary and unauthorized use of Diptyque's trademarks and logos,

---

[5] Italic's counsel has represented that Italic has ceased its annual-fee based member pricing, in apparent response to Diptyque's claims, and Italic's product pages appear to have been amended. Italic appears to retain an annual-fee based preferred membership in some capacity.

12

which serve only to intentionally associate Italic with Diptyque to consumers and trade on Diptyque's goodwill.

## **FIRST CLAIM FOR RELIEF**

### (Unfair Competition & False Advertising Under the Lanham Act– § 15 U.S.C. 1125(a))

### (Alleged by Both Plaintiffs)

39.     The allegations of all of the foregoing paragraphs of the Complaint are incorporated by reference as though fully restated herein.

40.     Italic has, in interstate commerce, knowingly, willfully, intentionally and maliciously made false or misleading descriptions of fact, or misrepresentations of fact, concerning the nature, characteristics, and qualities of Diptyque's candles.

41.     The conduct of Italic as described above conveys literally and impliedly false or materially misleading statements to consumers, constituting unfair competition and false advertisement in violation of the Lanham Act, in that Italic has published false or necessarily implied false and misleading statements that are likely to deceive consumers and direct them away from purchasing or otherwise using Diptyque's products and instead purchase products from Italic, and upon information and belief, the conduct above has actually deceived consumers.

42.     Diptyque's Marks are identified and associated in consumers' minds exclusively with Diptyque.  Diptyque owns all rights in the Diptyque Marks, and has never authorized Italic to use them.

43.     Italic's use of identical copies and colorable imitations of Diptyque's Marks in advertisements promoting Italic's inferior goods is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Italic with Diptyque.

44.     Italic is using the Diptyque Marks with full knowledge that they are associated exclusively with Diptyque and exclusively identify and distinguish Diptyque as the source of its goods and services.  Italic's acts of unfair competition are willful and deliberate and made with an intent to reap the benefit of the goodwill

and reputation associated with the Diptyque Marks.  By deliberately infringing the Diptyque Marks, and by making a false or misleading comparison to Diptyque products, Italic seeks to capitalize unlawfully on the reputation and goodwill that Diptyque, at great expense, has carefully cultivated with the consuming public.  By using the Diptyque Marks to market Italic's candles, Italic competes unfairly and in a manner prohibited by law.

45.    Upon information and belief, Diptyque has lost sales of its products due to Italic's unfair competition and false advertisement.

46.    Plaintiffs Diptyque and Diptyque Distribution have been and will continue to be injured as a direct and proximate result of Italic's unfair and deceptive acts and practices in that each has been deprived of the opportunity to earn future sales and profits by diversion of business away from each of them, and by the harm caused to Plaintiffs' business reputation.  In addition, Italic has been unjustly enriched, and will be unjustly enriched, by reason of its unfair and deceptive acts and practices, in that Italic receives a financial benefit as a direct and proximate result of its unlawful conduct.  The total amount of damages that Plaintiffs have sustained or will sustain, and the total amount by which Italic has been or will be unjustly enriched, will be proven at trial.

47.    Italic's false and misleading statements, unfair competition, and false advertisements rise to the level of "exceptional" within the meaning 15 U.S.C. § 1117(a) and justify an award to Plaintiffs of their reasonable attorney's fees and increased damages up to trebling.

48.    Italic's actions, as set forth above, constitute unfair competition and false advertisement in violation of 15 U.S.C. § 1125(a).

49.    Italic's conduct is also causing irreparable injury to Plaintiffs and their goodwill and reputation, and will continue to damage Plaintiffs and to deceive the public unless enjoined by this Court.  Plaintiffs have no adequate remedy at law.

14

## SECOND CLAIM FOR RELIEF

### (Trademark Infringement Under the Lanham Act – § 15 U.S.C. 1114(a))

### (Alleged by Plaintiff Diptyque)

50.    The allegations of all of the foregoing paragraphs of the Complaint are incorporated by reference as though fully restated herein.

51.    Diptyque holds federally registered and incontestable trademarks in the Diptyque Marks, which are used in commerce on Diptyque goods to indicate their source.  (*See* **Exhibit B**).

52.    Italic is using a reproduction, counterfeit, copy, or colorable imitation of the Diptyque Marks in Italic's advertisements used in commerce, without Diptyque's consent or permission ("unauthorized use").

53.    Italic's unauthorized use of the Diptyque Marks also includes, but is not limited to, altering the Diptyque Marks themselves in color and placement, altering the products on which they appear, and otherwise using them to describe an inaccurate Diptyque product, and the qualities and pricing of the same.

54.    Italic's unauthorized use of the Diptyque Marks in commerce, in connection with the advertising of Italic's goods or services, is likely to cause confusion, mistake or deception as to the source or sponsorship of Italic's goods or services, and/or the material qualities of Diptyque's and/or Italic's goods or services.

55.    Italic's unauthorized use of the Diptyque Marks in its advertising is willful, intended to reap the benefit of Diptyque's goodwill, and constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

56.    Italic's use does not constitute a "nominative fair use" in advertising. The Ninth Circuit has stated that in considering nominative fair use, a defendant must meet three requirements: (1) the product or service in question <u>must</u> be one not readily identifiable without use of the trademark; (2) only so much of the mark or marks may be used as is <u>reasonably necessary</u> to identify the product or service; and

(3) the user must do <u>nothing</u> that would, in conjunction with the mark, <u>suggest sponsorship or endorsement</u> by the trademark holder.  *New Kids on the Block v. News America Publishing, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992).  (emphasis added).  As detailed herein, Italic's unauthorized and inaccurate use fails to satisfy those requirements.

57.    Upon information and belief, Diptyque has suffered injury caused by Italic's conduct, including through the diversion of potential sales.

58.    Italic's unauthorized use violates 15 U.S.C. § 1114(1)(a) as use of a counterfeit mark or designation in commerce in connection with the sale, offering for sale or distribution of goods or services, which entitles Diptyque to treble damages and reasonable attorneys' fees, pursuant to 15 U.S.C. § (b).

59.    Italic's conduct is causing irreparable injury to Diptyque and to its goodwill and reputation, and will continue to damage Diptyque and to deceive the public unless enjoined by this Court. Diptyque has no adequate remedy at law. Injunctive relief is warranted in view of Diptyque's likelihood of prevailing on its claims, the balance of hardships as between the parties, and the public interest that would be served by enjoining Italic's use of the Diptyque Marks and any confusingly similar variations of the same.

### THIRD CLAIM FOR RELIEF
#### (Copyright Infringement Under 17 U.S.C. § 501)
#### (Alleged by Plaintiff Diptyque)

60.    The allegations of all of the foregoing paragraphs of the Complaint are incorporated by reference as though fully restated herein.

61.    Diptyque owns all rights, title, and interest in the Diptyque Copyright, which comprises a unique work of visual art and otherwise consists of original copyrightable subject matter under the laws of the United States.  (*See* **Exhibit C**.)

62.    The BAIES Logo that is the subject of the Diptyque Copyright was created by a French domiciliary and first published in France in 1983, prior to being

later assigned by agreement to Diptyque.  As a work first published in a foreign country that is a signatory to the Berne Convention for the Protection of Literary and Artistic Works (as is the U.S.), the Diptyque Copyright is not considered a "United States work" under the definition in 17 U.S.C. § 101, and is thus excepted from the requirement that a work be registered in the United States prior to commencing a copyright infringement suit under 17 U.S.C. § 411.

63.     Italic has directly, vicariously, contributorily and/or by inducement willfully infringed the Diptyque Copyright by reproducing, displaying, distributing, and utilizing the Diptyque Copyright for purposes of trade in violation of 17 U.S.C. §§ 501 *et seq*.

64.     At no time did Diptyque authorize, license, permit, or consent to Italic copying, distributing, and/or displaying the Diptyque Copyright.

65.     Italic's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

66.     Italic's wrongful acts have caused, and are causing, substantial injury to Diptyque.  Unless this Court restrains Italic from further commission of said acts, Diptyque will suffer irreparable injury for which it is without an adequate remedy at law.  Accordingly, Diptyque seeks a declaration that Italic is infringing the Diptyque Copyright and an order under 17 U.S.C. § 502 enjoining Italic from any further infringement.

### FOURTH CLAIM FOR RELIEF

**(False Advertising Under California's False Advertising Law ("FAL"), California Business & Professions Code § 17500, et seq.)**

**(Alleged by Plaintiff Diptyque)**

67.     The allegations of all of the foregoing paragraphs of the Complaint are incorporated by reference as though fully restated herein.

68.     California's False Advertising Law makes it unlawful for any person to make or disseminate before the public any statement which is untrue or misleading in connection with the sale or disposition of goods.  Cal. Bus. & Prof. Code § 17500.

17

69.     Based on the conduct described above, Italic has made material, false or impliedly false and misleading statements or representations of fact about Diptyque's candles. When engaging in such conduct, Italic knew, or with the exercise of reasonable care should have known, that such statements were untrue and/or misleading.

70.     Upon information and belief, Diptyque has suffered injury caused by Italic's conduct, including through the diversion of potential sales, and harm to Diptyque's good will and reputation.

71.     Italic's conduct is causing irreparable injury to Diptyque and to its goodwill and reputation, and will continue to damage Diptyque and to deceive the public unless enjoined by this Court. Diptyque has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF

### (Unfair Competition Law ("UCL") Under California Business and Professions Code § 17200, *et seq*.)

### (Alleged by Plaintiff Diptyque)

72.     The allegations of all of the foregoing paragraphs of the Complaint are incorporated by reference as though fully restated herein.

73.     The UCL defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code § 17200.

74.     The violation of any law constitutes an "unlawful" business practice under the UCL.  As detailed herein, the acts and practices alleged were intended to or did result in violations of the Lanham Act, the Copyright Act, and California's FAL.  Specifically, Italic has made false, deceptive, or misleading representations of facts or omissions of fact about Diptyque's candles and Italic's candles that are likely to mislead reasonable consumers, and has infringed the Diptyque Marks and Diptyque Copyright.  For the same reasons, Italic has engaged in "unfair, deceptive, untrue or misleading" advertising.

18

75.     Upon information and belief, Diptyque has suffered injury caused by Italic's conduct, including through the diversion of potential sales and harm to Diptyque's good will and reputation.

76.     Italic's conduct is causing irreparable injury to Diptyque and to its goodwill and reputation, and will continue to damage Diptyque and to mislead and deceive the public unless enjoined by this Court.  Diptyque has no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF

### (Common Law Unfair Competition)

### (Alleged by Plaintiff Diptyque)

77.     All of the preceding paragraphs are re-alleged and incorporated herein by reference as if set forth fully herein.

78.     The conduct of Italic as described above constitutes unfair competition under California common law, in that Italic has published false and misleading statements that are likely to deceive consumers and deter them away from purchasing or otherwise using Diptyque's candles and instead purchase Italic's products, especially through Italic's misuse of the Diptyque Mark and Diptyque Copyright to gain additional sales.

79.     Upon information and belief, Diptyque has lost sales of its products in California and elsewhere due to Italic's unfair competition and false advertising.

80.     Diptyque has been and will continue to be injured as a direct and proximate result of Italic's unfair competition in that Diptyque has been deprived of the opportunity to earn future sales and profits by diversion of business away from Diptyque and by the harm caused to Diptyque's business reputation and goodwill. In addition, Italic has been unjustly enriched, and will be unjustly enriched, by reason of its unfair competition, in that Italic receives a financial benefit as a direct and proximate result of its unfair and unlawful conduct. The total amount of damages

that Diptyque has sustained or will sustain, and the total amount by which Italic has been or will be unjustly enriched, will be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for relief as follows:

(a)    For a judgment that Italic is liable for false advertising, unfair competition, trademark infringement and copyright infringement, in accordance with each of the claims for relief alleged herein;

(b)    For a preliminary and/or permanent injunction to enjoin Italic from (i) offering, advertising, or promoting any product making false or misleading representations or descriptions of fact, in any medium, regarding Diptyque's or Italic's products or services, including enjoining Italic from further use of any billboards, print advertisements, or digital advertisements containing the false or impliedly false and misleading statements discussed above; (ii) making any other false representations or false descriptions of fact, in any medium, concerning or relating to Diptyque or its products, or otherwise falsely or misleadingly comparing any of Italic's products to any of Diptyque's products; (iii) engaging in any other activity constituting false or misleading advertising, or infringement of the Diptyque Marks or Diptyque Copyright, or unfair competition with Diptyque;

(c)    For damages against Italic, in an amount to be determined at trial, to the extent permitted by the applicable law;

(d)    For disgorgement of any unlawful profits obtained by Italic through the aforementioned acts, under equity or as a substitute measure for damages;

(e)    For an award of nominative damages if necessary;

(f)    For a finding that this case is "exceptional" within the meaning 15 U.S.C. § 1117(a) and an award of reasonable attorney's fees and expenses.

(g)    For an award of actual damages, trebled pursuant to 15 U.S.C. § 1117(a), arising out of Italic's acts of willful false or misleading advertising, and unfair competition;

(h)     For an order that Italic account for and pay three times the profits realized by Italic from its infringement of the Diptyque Marks and its false or misleading advertising and unfair competition with Diptyque;

(i)     For an award of pre-judgment and post-judgment interest at the maximum rate, on the foregoing sums;

(j)     For an award of Plaintiffs' costs of suit;

(k)     For an award of exemplary and punitive damages to deter any future willful infringement and conduct, as the Court finds appropriate; and

(l)     For such other legal and equitable relief as may be available under law and which the Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiffs hereby demand trial by jury as to all issues so triable.

Date: October 18, 2021

*By: /s/ Christian E. Mammen*
     Christian E. Mammen

Christian E. Mammen (State Bar No. 188454)
Chris.Mammen@wbd-us.com
Carrie Richey (State Bar No. 270825)
Carrie.Richey@wbd-us.com
**WOMBLE BOND DICKINSON (US) LLP**
1841 Page Mill Road, Suite 200
Palo Alto, CA 94304
Tel.: 408-341-3067
Fax: 408-341-3098

Peter Bromaghim (State Bar No. 240821)
Peter.Bromaghim@wbd-us.com
**WOMBLE BOND DICKINSON (US) LLP**
12400 Wilshire Blvd., Ste. 600
Los Angeles, CA 90025
Tel.: 424-369-2056

*Attorneys for Plaintiffs* DIPTYQUE SAS and DIPTYQUE DISTRIBUTION LLC

COMPLAINT                                    CASE NO.: